IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC DUARTE, | No. C 05-01374 CW (PR) |
| Plaintiff, | ORDER GRANTING DEFENDANT WONG'S MOTION FOR SUMMARY JUDGMENT, ISSUING SECOND ORDER OF SERVICE, AND ADDRESSING PENDING MOTIONS |
| v. | |
| CAPTAIN TOBY WONG, | |
| Defendant. | (Docket nos. 28, 34, 37, 38, 39) |

## INTRODUCTION

Plaintiff Eric Duarte, a state prisoner incarcerated at Salinas Valley State Prison (SVSP), brought this pro se civil rights case under 42 U.S.C. § 1983 while in custody at the Santa Clara County Main Jail (Main Jail). Plaintiff alleges that Main Jail employees were deliberately indifferent to his serious medical needs when they delayed medical treatment for his injured foot and forced him to walk on it unassisted, causing him unnecessary pain and suffering.

In an Order dated February 24, 2006, the Court found that Plaintiff's allegations stated a cognizable Eighth Amendment claim (docket no. 5). The Court noted that Plaintiff was suing Defendants Santa Clara County Sheriff Laurie Smith and Captain Toby Wong in their supervisorial capacities because of their failure to ensure constitutionally adequate medical care for all those in the Main Jail. Defendants now move for summary judgment (docket no. 28).[1] Plaintiff has filed an opposition, and Defendants have filed

---

[1] Defendants do not raise a qualified immunity defense in their motion for summary judgment.

a reply.[2]

For reasons discussed below, the Court GRANTS the motion for summary judgment as to Defendant Wong.[3]

## FACTUAL BACKGROUND

On October 27, 2004, at approximately 9:30 p.m., Plaintiff injured his left foot while playing handball. (Pl.'s Aff. at 1.) He immediately requested medical attention, and showed Correctional Officer Gill a lump protruding from his left foot. (Id.) Plaintiff informed Officer Gill that he could not walk to his cell. (Id.) Officer Gill handcuffed Plaintiff and asked Plaintiff's cellmate, inmate Melecho Casarez, to assist Plaintiff in walking back to their cell. (Id.) Plaintiff continued to complain to Officer Gill that his foot still hurt. (Id.) Plaintiff claims that Officer Gill's response was to remove Plaintiff's handcuffs from behind him, and Plaintiff was then "cuffed with [his] hands in front of [him]." (Id.) Plaintiff alleges that he traveled approximately 100 yards "partially walk[ing] on the hill [sic] of his foot and hopp[ing]

---

[2] On February 15, 2007, Plaintiff filed a document entitled "Plaintiff Eric Duarte's Objection to Evidence Cited in Defendant's [sic] Reply Brief In Support of Defendant's [sic] Motion for Summary [JUDGMENT]" (docket no. 53). Plaintiff repeats his allegations from his opposition and argues that he "should have been rushed to medical professionals as soon as possible." He also requests a stay in the Court's ruling on the motion for summary judgment until he has "obtained the name of the second escorting officer who was C/O Bevan's partner that escorted Plaintiff to [Valley Medical Hospital (VMC)]." The Court DENIES Plaintiff's motion for a stay because the requested discovery has no bearing on Defendant Wong's motion for summary judgment. Furthermore, the Court will be serving the named Doe Defendants in this action and will be allowing discovery in accordance with the Federal Rules of Civil Procedure; therefore, Plaintiff may make any discovery requests, i.e., the name of the second escorting officer, once the remaining Defendants have been served.

[3] Defendant Smith's motion for summary judgment is terminated as moot because all claims against Defendant Smith have been dismissed. (June 5, 2007 Order Granting Mot. to Dismiss at 1.)

2

with the assistance of Mr. Casarez back to [his] cell." (Id.)

At 10:10 p.m., Officer Gill called a nurse to examine Plaintiff's foot. (Chyorny Aff., Ex. A.) At 10:30 p.m., Plaintiff claims a nurse named "Nurse Myrna" examined him. (Pl.'s Aff. at 2.) The progress notes show that the nurse assessed a possible fracture of Plaintiff's fifth left toe. (Chyorny Aff., Ex. B.) Because Plaintiff's injury occurred late in the evening and the Main Jail did not provide x-ray services at that time, the nurse scheduled his x-ray for the following morning. (Id.) She told Plaintiff to elevate his leg and apply ice to ease the swelling. (Id.) She did not prescribe pain medication because Plaintiff had received three doses of Motrin earlier that day under a prescription for a previous injury. (Chyorny Aff., Ex. D.)

Thereafter, Officer Gill sent Defendant Wong a document entitled "Employee Report," which stated in part:

> At approximately 2130 hrs Inmate Duarte informed me that he injured his left foot while playing handball. I secured Inmate Duarte and Casarez and brought them back to their cell. I then informed nurse Myrna of the injury. At 2230 hrs Nurse Myrna examined Inmate Duarte and provided him with and [sic] ice pack to get the swelling down. As per nurse Myrna Inmate Duarte will have an x-ray done to his left foot.

(Chyorny Aff., Ex. A, Employer's Report IR #04-19547 at 00162.) The report also had a handwritten note which stated, "Recently sentenced to 460 yrs -- security Risk if transported to VMC!" (Id.)

The next day, at approximately 10:00 a.m., Plaintiff had to walk in leg restraints, unassisted, for about 150 yards to have his x-ray. (Pl.'s Aff. at 2.) The x-ray technician told Plaintiff that his foot was broken. (Id.) Plaintiff claims that even though

3

the correctional officer escorting him acknowledged hearing the x-ray technician's statement, Plaintiff was forced to walk back to his cell unassisted. (Id.)

At approximately 2:00 p.m., Plaintiff filed a 602 inmate appeal requesting immediate medical attention. (Id.) His grievance was granted, and he was told to prepare for transport to VMC. (Id.) Plaintiff was then placed in waist chains and leg restraints, and forced to walk to the van. (Id.) He fell forward onto his stomach as he attempted to enter the van. (Id.) He alleges that when entering the van, he had to put all his weight on his injured foot, which caused him severe pain. (Id.) At 6:00 p.m., he was taken to the VMC Emergency Department. (Chyorny Aff., Ex. E.) Upon arrival, the correctional officers parked forty yards from the hospital entrance rather than at the hospital drop-off zone, and made him walk to the hospital. (Pl.'s Aff. at 2-3.)

At VMC, Plaintiff was examined by Dr. Brendan Garrett and Dr. David Nix. (Chyorny Aff., Ex. E.) The two doctors consulted Dr. Ray Oshtoy, an orthopedist, by telephone. (Id.) Plaintiff was diagnosed with an oblique fracture of his fifth metatarsal. (Id.) He was given a hard-sole shoe to wear and crutches. (Id.) Plaintiff was also given prescriptions for Vicodin and Motrin. (Id.) He was instructed to keep his foot rested, iced and elevated. (Id.) He was scheduled for a follow-up appointment for the following week. (Id.) Although he was given crutches, Plaintiff claims that the waist chains securing his hands to his waist and the leg shackles securing his ankles together made any safe movement impossible. (Pl.'s

4

Aff. at 3.)  Plaintiff declined the crutches and requested a wheelchair instead.  (Id.)  He claims that Correctional Officer Bevan was unable to grant Plaintiff's request for a wheelchair without authorization from the jail.  (Id.)  As a result, Plaintiff had to walk back to the van in leg shackles.  (Id.)

At the Main Jail, Plaintiff alleges that he had to walk back to the medical unit to be cleared by a medical professional.  (Id.) Plaintiff again requested a wheelchair to assist him in returning to his cell, but his request was denied.  (Id.)  Plaintiff was forced to walk back to his cell.  (Id.)

On October 29, 2004, at 6:00 a.m., Plaintiff requested a wheelchair to go to his court hearing.  (Id.)  Plaintiff's request was denied.  (Id.)  Plaintiff then refused to attend his hearing. (Id.)  He filed a 602 appeal requesting a wheelchair and to be rehoused in the medical unit.  (Id.)  Approximately twenty minutes later, the floor correctional officer told Plaintiff that his grievance "would be approved if [he] would cuff up . . . and go to court."  (Id.)  Plaintiff alleges a wheelchair was then brought to his cell door, and he decided to "cuff up" and go to court.  (Id.) After he returned from court, Plaintiff was cleared to transfer to the "second floor medical housing until for sick and injured inmates."  (Id.)

On November 3, 2004, Plaintiff was seen by Dr. J. Lukrich at the Main Jail infirmary.  (Chyorny Aff., Ex. F.)  Dr. Lukrich's progress notes indicate that Plaintiff did not want to be rehoused and that he also refused casting.  (Id.)  Plaintiff was encouraged to comply with the VMC orthopedist to ensure that he would regain

5

full range of motion and reduce his risk of arthritis. (Id.)

On November 5, 2004, at approximately 10:21 a.m., Dr. David Sohn reviewed Plaintiff's x-rays during a follow-up appointment at the VMC Orthopedic Clinic. (Chyorny Aff., Ex. G.) Dr. Sohn also found that Plaintiff had fractured the fifth metatarsal of his left foot. (Id.) He found an "acceptable alignment," and told Plaintiff to wear his hard-sole shoe for five weeks. (Id.)

On November 6, 2004, an orthopedist at the Main Jail infirmary reviewed Plaintiff's x-rays and found a minimal displacement of his fracture. (Id., Ex. H.) The orthopedist told Plaintiff to continue wearing his hard-sole shoe, and he also prescribed Motrin for pain relief. (Id.)

The Main Jail infirmary did not receive any requests for medical attention from Plaintiff related to his foot injury between November 5, 2004 and December 5, 2004. (Chyorny Aff. ¶ 14.)

On December 5, 2004, Main Jail medical staff checked Plaintiff's fracture. Plaintiff was "ambulatory [with] a steady gait." (Id., Ex. H.)

On December 6, 2004, an orthopedist at the Main Jail reviewed Plaintiff's medical chart and determined that Plaintiff could be housed with the general population. (Id.)

After December 6, 2004, there were no further entries in Plaintiff's medical record pertaining to his foot fracture. (Id., Ex. I.)

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain and when, viewing the

6

evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Eisenberg v. Ins. Co. of N. Am.</u>, 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. <u>Celotex</u>, 477 U.S. at 324; <u>Eisenberg</u>, 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325. The burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." <u>Bhan v. NME Hosps., Inc.</u>, 929 F.2d 1404, 1409 (9th Cir. 1991), <u>cert. denied</u>, 502 U.S. 994 (1991). A complete failure of proof concerning an essential element of the non-moving

7

party's case necessarily renders all other facts immaterial. Celotex, 477 U.S. at 323.

## DISCUSSION

I.  Deliberate Indifference to Serious Medical Needs

Deliberate indifference to serious medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997)(en banc); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986). The analysis of a claim of deliberate indifference to serious medical needs involves an examination of two elements: (1) a prisoner's serious medical needs and (2) a deliberately indifferent response by the defendants to those needs. McGuckin, 974 F.2d at 1059.

A.  Serious Medical Need

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "wanton infliction of unnecessary pain." Id. (citing Estelle, 429 U.S. at 104). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

8

Defendant argues that Plaintiff's "fifth metatarsal fracture was not the sort of major injury for which immediate medical attention was required." (Mot. for Summ. J. at 6.) Plaintiff claims that his injury constituted a serious medical need, because a reasonable patient and doctor would find it important and worthy of treatment. The record shows that three doctors treated Plaintiff and gave him a hard-sole shoe to wear, prescribed pain medication and scheduled a follow-up appointment. (Id., Ex. E.) Additionally, Plaintiff claimed that he could not walk because of the pain resulting from his fractured foot. (Pl.'s Aff. at 3.) Plaintiff's inability to bear his full weight on his left foot significantly affected his ability to walk, which is a daily activity. The Court finds that there is a triable issue of fact raised as to whether Plaintiff's foot injury constitutes a "serious medical need." Based on the evidence before it, a reasonable jury could conclude that Plaintiff's foot injury constitutes a serious medical need and summary judgment cannot be granted on this basis.

B.  Deliberate Indifference

Plaintiff alleges that Defendant Wong was deliberately indifferent to his serious medical needs. Plaintiff sues Defendant Wong in his supervisorial capacity. Specifically, Plaintiff claims that Defendant Wong had knowledge that Plaintiff was treated with deliberate indifference by Main Jail employees. He also claims that Defendant Wong failed to train, supervise and control his subordinates to cause them to adhere to jail policy.

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). In order to establish deliberate indifference, a plaintiff must show a purposeful act or failure to act on the part of the defendant and a resulting harm. McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Such indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison officials provided medical care. See McGuckin, 974 F.2d at 1062.

A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. See Franklin v. State of Or., State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981); Toguchi v. Chung, 391 F.3d 1051, 1130 (9th Cir. 2004); McGuckin, 974 F.2d at 1059 (mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights); O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990) (repeatedly failing to satisfy requests for aspirins and antacids to alleviate headaches, nausea and pain is not constitutional violation; isolated occurrences of neglect may constitute grounds for medical malpractice but do not rise to level of unnecessary and wanton infliction of pain).

A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's

10

wrongful conduct and the constitutional violation. <u>Redman v. County of San Diego</u>, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted). A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989). An administrator may be liable for deliberate indifference to a serious medical need, for instance, if he or she fails to respond to a prisoner's request for help. <u>Jett v. Penner</u>, 439 F.3d 1091, 1098 (9th Cir. 2006). "It has long been clearly established that '[s]upervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.'" <u>Preschooler II v. Clark County School Bd. of Trustees</u>, 479 F.3d 1175, 1183 (9th Cir. 2007) (citations omitted).

The record shows that Defendant Wong received a report from Officer Gill directly after the incident. While the report contains information that Plaintiff injured his left foot, the Court finds that Plaintiff has failed to present evidence of Defendant Wong's participation in, direction or knowledge of the alleged violations. <u>Cf.</u> <u>Jett</u>, 439 F.3d at 1098 (evidence of a prisoner's letter to an administrator alerting him to a constitutional violation is sufficient to generate a genuine issue of material fact as to whether the administrator was aware of the

11

violation, even if he denies knowledge and there is no evidence the letter was received).  At most, Plaintiff has presented evidence that Defendant Wong knew that Plaintiff was injured, that he was seen by a nurse, that he needed an x-ray scheduled, and that he was a security risk if transported to the hospital.  The report did not refer to any of Plaintiff's interactions with Main Jail staff that he alleges were constitutional violations, such as being forced to walk on his injured foot unassisted, or any of the events that took place after the night of the incident.  Without knowledge of the alleged violations, Defendant Wong could not have responded to or be held liable for failing to respond to such violations.  In addition, there is an absence of evidence of Defendant Wong's alleged failure to train, supervise and control his subordinates to adhere to jail policy.

Even if Defendant Wong were liable in his supervisorial capacity, the Court finds that he is not liable for being deliberately indifferent to Plaintiff's medical needs.  Plaintiff claims that the inadequate medical treatment and delay caused significant harm.  To the contrary, the evidence shows that Plaintiff received sufficient medical treatment within a reasonable amount of time.  Within one hour of his injury, Plaintiff was seen by a nurse in his cell.  Because the Main Jail did not have x-ray services available at the time of the injury, the nurse scheduled an x-ray to be taken the following morning.  The nurse did not prescribe Plaintiff pain killers because he already had an outstanding prescription.  After an x-ray was taken, Plaintiff was brought to the VMC Emergency Room, where he was treated by three doctors, including one orthopedist.  Plaintiff was given Vicodin

12

and a hard-sole shoe to wear. He was also scheduled for a follow-up appointment the following week. Thereafter, Plaintiff was treated by orthopedists and the Main Jail medical staff until December, 2004. At most, Plaintiff has alleged a claim of negligence, which does not rise to the level of deliberate indifference to his serious medical needs.

Accordingly, Defendant Wong is entitled to summary judgment on the deliberate indifference claim as a matter of law. See Celotex Corp., 477 U.S. at 323.

II.  Named Doe Defendants and Service Order

As mentioned above, the Court found cognizable Plaintiff's Eighth Amendment claims against several Doe Defendants. Plaintiff has since filed an amended complaint identifying five Doe Defendants as: (1) Correctional Officer Gill for failing to take "steps to immediately call for medical assistance" directly after Plaintiff's injury and forcing Plaintiff to walk back to his cell; (2) Sergeant Csabanyi, in his supervisorial capacity, for approving the Employee's Report written by Officer Gill; (3) "Nurse Myrna" for failing to take "further steps to secure Plaintiff's left foot, address the obvious pain Plaintiff was in, [or] call for emergency medical help" after Plaintiff's injury; (4) Doctor Nguyen, who examined the x-rays of Plaintiff's left foot, for failing to "secure Plaintiff's foot by placing a splint or any other medical remedy;" and (5) Correctional Officer Bevan for denying Plaintiff's request for a wheelchair and forcing Plaintiff to walk to and from the VMC Emergency Department while witnessing the "pain and suffering Plaintiff was in. . . ." (Am. Compl. at 2-4.)

In light of the Court's ruling on Defendant Wong's motion for summary judgment, the Court finds that Plaintiff does not adequately state a claim for relief against Defendant Csabanyi, who, like Defendant Wong, is being sued in his supervisorial capacity. Therefore, Plaintiff's claims against Defendant Csabanyi are DISMISSED.

The claims asserted against Defendants Nguyen and "Nurse Myrna" are susceptible to resolution on the facts now before the Court. Because the medical records concerning Plaintiff's medical treatment for his injured foot have been submitted, further briefing is not necessary. Summary judgment may be properly entered in favor of unserved defendants where (1) the controlling issues would be the same as to the unserved defendants, (2) those issues have been briefed and (3) Plaintiff has been provided an opportunity to address the controlling issues. Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery, 44 F.3d 800, 802-03 (9th Cir.), cert. denied, 116 S. Ct. 178 (1995) (citing, inter alia, Silverton v. Department of the Treasury, 644 F.2d 1341, 1345 (9th Cir. 1981)). Such is the case here. Plaintiff's claims against Defendants Nguyen and "Nurse Myrna" would require a showing that Plaintiff was denied proper medical care. Plaintiff has had an opportunity to present evidence on these issues. The Court has found that Plaintiff received sufficient and timely medical care; therefore, Plaintiff cannot prevail on his claims against Defendants Nguyen and "Nurse Myrna," and they are entitled to summary judgment as a matter of law.

The Eighth Amendment claims against the remaining named Doe Defendants will be served.

CONCLUSION

For the foregoing reasons,

1. Defendant Wong's motion for summary judgment (docket no. 28) is GRANTED. Judgment in favor of Defendant Wong, as well as Defendants Nguyen and "Nurse Myrna," shall be entered.

2. Defendant Smith's motion for summary judgment (docket no. 28) is terminated as moot.

3. Plaintiff's claims against Defendant Csabanyi are DISMISSED.

4. The Clerk of the Court shall mail to Defendants <u>Correctional Officer Gill #2528 and Correctional Officer Bevan #1597</u> at the Santa Clara County Main Jail: a Notice of Lawsuit and Request for Waiver of Service of Summons; two copies of the Waiver of Service of Summons; a copy of the original complaint (docket no. 1); a copy of the Amended Complaint filed on July 13, 2006; a copy of Plaintiff's Affidavit attached to his Opposition (docket no. 49); a copy of the February 24, 2006 Order of Service; and a copy of this Order. The Clerk of Court shall also mail a copy of the Amended Complaint and a copy of this Order to the Office of the County Counsel in San Jose. Additionally, the Clerk shall mail a copy of this Order to Plaintiff.

5. Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and complaint. Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fail to do so, they will be required to bear the cost of such

15

service unless good cause be shown for their failure to sign and return the waiver form.  If service is waived, this action will proceed as if Defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve and file an answer before <u>sixty (60) days</u> from the date on which the request for waiver was sent.  (This allows a longer time to respond than would be required if formal service of summons is necessary.)  Defendants are asked to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons.  If service is waived after the date provided in the Notice but before Defendants have been personally served, the Answer shall be due <u>sixty (60) days</u> from the date on which the request for waiver was sent or <u>twenty (20) days</u> from the date the waiver form is filed, whichever is later.

    6.  Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure.  The following briefing schedule shall govern dispositive motions in this action:

        a.  No later than <u>thirty (30) days</u> from the date their answer is due, Defendants shall file a motion for summary judgment or other dispositive motion.  The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56.  If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due.  All papers filed with the Court shall be promptly served on Plaintiff.

16

b. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than thirty (30) days after the date on which Defendants' motion is filed. The Ninth Circuit has held that the following notice should be given to pro se plaintiffs facing a summary judgment motion:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted in favor of defendants, your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 963 (9th Cir. 1998) (en banc).

Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex, 477 U.S. at 323-24 (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce

17

<u>evidence</u> in support of those allegations when he files his opposition to Defendants' dispositive motion. Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn declaration. Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

      c. If Defendants wish to file a reply brief, they shall do so no later than <u>fifteen (15) days</u> after the date Plaintiff's opposition is filed.

      d. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

   7. Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

   8. All communications by Plaintiff with the Court must be served on Defendants, or Defendants' counsel once counsel has been designated, by mailing a true copy of the document to Defendants or Defendants' counsel.

   9. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion.

   10. Extensions of time are not favored, though reasonable extensions will be granted. Any motion for an extension of time must be filed no later than seven days prior to the deadline sought to be extended.

18

11. Plaintiff's pending motions including his: "Request for Conference Between Defendants [sic] Counsel and Plaintiff" (docket no. 34); Requests for Phone Depositions of Lt. Troy Beliveau (docket no. 37) and Alexander Chyorny, M.D. (docket no. 38); and "Notice of Motion and Motion for 'Order for Physical Examination' of Plaintiff's Medical Records and Plaintiff's Left Foot" (docket no. 39)[4] are DENIED as premature.

12. The Clerk of the Court is directed to file the document labeled "Amended Complaint to Add and Name Doe Defendants," and docket the aforementioned document as Plaintiff's "Amended Complaint." The Clerk is further directed to mark the Amended Complaint as filed on July 13, 2006, the date it was received by the Court.

13. This Order terminates Docket nos. 28, 34, 37, 38, and 39.

IT IS SO ORDERED.

Dated: 9/24/07

CLAUDIA WILKEN
United States District Judge

---

[4] When the mental or physical condition of a party (or a person under the custody or legal control of a party) is at issue in a lawsuit, Rule 35 of the Federal Rules of Civil Procedure allows the court to order that person to submit to a physical or mental examination. The examination must be done by a suitably licensed or certified examiner, such as a physician or psychiatrist. The party who requested the examination must pay for it. In the present case, the Court is unable to assess at this time whether a physical examination of Plaintiff's left foot is necessary. For this reason, his motion is DENIED as premature.

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

DUARTE,

    Plaintiff,

v.

SMITH et al,

    Defendant.

Case Number: CV05-01374 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 24, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Eric Duarte T-24814
Salinas Valley State Prison
#235/L
P.O. Box 1050
Soledad, CA 93960-1060

Neysa A. Fligor F
Office of the County Counsel
70 West Hedding Street, East Wing, 9th Fl
San Jose, CA 95110

Dated: September 24, 2007

            Richard W. Wieking, Clerk
            By: Sheilah Cahill, Deputy Clerk

20